## UNITED STATES PLYWOOD CORPORATION v. ZEESMAN PLYWOOD CORPORATION et al.

### Civ. A. No. 8086.

United States District Court
S. D. California, Central Division.
Feb. 23, 1950.

James M. Heilman, New York City, and Harris, Kiech, Foster & Harris, Ward D. Foster, and Jack Barry, Jr., all of Los Angeles, Cal., for plaintiff.

J. E. Simpson, Los Angeles, Cal., for defendants Rose B. Vener, individually, Rose B. Vener, doing business under fictitious firm name and style of Zero Plywood Co., Zero Plywood Corp., Harry G. Bailey and Romania Moore.

Don R. Lehman, Los Angeles, Cal., for defendant Rose B. Vener, as Adm'x of Estate of Max Vener, deceased.

Wm. Mackenzie Brown, Los Angeles, Cal., for defendants J. William Back and Back Panel Co.

Lyon & Lyon, Reginald E. Caughey, all of Los Angeles, Cal., for defendants Zeesman Plywood Corporation, Norman Zeesman & Co., Norman Zees ˳an and Norman N. Nussbaum.

J. Calvin Brown, Los Angeles, Cal., for defendants American Plywood Co., Inc., Robert A. Vener, doing business under fictitious firm name and style of Vener & Son, and Robert A. Vener, individually.

HALL, District Judge.

This Court having heretofore considered Plaintiff's first Motion for Preliminary Injunction on July 28, 1948, and having on that date made an oral order granting said preliminary injunction, and having on April 12, 1949, D.C., 84 F.Supp. 78, made its formal Order on Plaintiff's said first Motion for Preliminary Injunction, directing the issue of a Preliminary Injunction; and this Court having on June 16, 1949, issued its first Writ of Preliminary Injunction, which orders and writ restrained Defendants, Zeesman Plywood Corporation, a corporation, American Plywood Co., Inc., a corporation, Norman Zeesman & Company, a partnership composed of Norman Zeesman and Norman N. Nussbaum, Norman Zeesman, individually, Norman N. Nussbaum, individually, and Robert A. Vener, and each of them, their officers, agents, servants, employees, and attorneys, and those in active concert or participating with them, or any of them, and who by personal service or otherwise shall have received actual notice of said injunction, from, directly or indirectly, infringing upon United States Letters Patent No. 2,286,068, or any of the claims thereof, by the manufacture, use, or sale of grooved plywood exemplified by Plaintiff's Exhibit 1-50-13-C (Plaintiff's former Exhibit 3) and bearing the trademark "ZEETEX" (made by a process of cutting grooves in plywood) or otherwise; and

This Court having issued its Order to Show Cause on July 29, 1949, and Said Order to Show Cause duly coming on for hearing before this Court on September 6 and 8, 1949; and this Court having, by its Judgment Holding Defendant Robert A. Vener Guilty of Contempt, entered December 15, 1949, and its Findings of Fact and Conclusions of Law on Judgment Holding Defendant Robert A. Vener Guilty of Contempt, filed December 15, 1949, and its oral order of September 8, 1949.

ordered and adjudged Defendant Robert A. Vener guilty of contempt of Court for violation of said first preliminary injunction because of the manufacture and sale, and his active concert with those engaged in the manufacture of grooved plywood bearing the trade-mark "VENETEX" and exemplified by Plaintiff's Exhibits 1-50-21 and 1-50-23 (Plaintiff's former Exhibits 52 and 53); and

This Court having, by its Order re Record on Order to Show Cause and on Motion for Preliminary Injunction, dated November 14, 1949, ordered that there be deemed for all of the purposes of this action that the record on Motion of December 19, 1949, for Preliminary Injunction shall include all of the record on the first Order to Show Cause, dated July 29, 1949, and the first Motion for Preliminary Injunction, dated April 30, 1948, and this Court having, on December 27, 1949, modified said order dated November 14, 1949, by providing that Plaintiff copy and serve on counsel for these Defendants certain portions of said earlier record, and Plaintiff having done so, and this Court having fully considered Plaintiff's Memorandum of Points and Authorities in support of Motion of December 19, 1949, for Preliminary Injunction, filed January 10, 1950, Defendants' Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for a Preliminary Injunction, the arguments, contentions, and statements of all counsel during said hearings on this motion, and the following:

## Plaintiff's Exhibits

PX–1–50–2     First Combined Amended and Supplemental Complaint—filed Oct. 31, 1949.

PX–1–50–3     "Affidavits in Support of Motion of Dec. 19, 1949, for Preliminary Injunction and Order to Show Cause" (including Affidavits of W. J. Daugherty, Ward D. Foster, James M. Heilman, Charles West, Richard S. Lowell [Paragraph 3 excluded], J. C. Stancliffe, J. C. McClung, J. D. Adams, R. G. Russell, B. P. Bradford, Joseph E. Graham, L. J. Lewis, Lin B. Densmore)—filed Dec. 22, 1949.

PX–1–50–4     Affidavit of S. W. Antoville and (attached) Affidavit of George W. Rummell (Paragraph 2 excluded)—filed Jan. 6, 1950.

PX–1–50–5     Affidavit of W. J. Daugherty—filed Dec. 23, 1949.

PX–1–50–6     Deposition of Arthur Trotter of Dec. 19, 1949—filed Dec. 22, 1949.

PX–1–50–7     Depositions of Robert A. Vener, Harry G. Bailey, Rose B. Vener, and J. William Back commencing Aug. 18, 1949—filed Sept. 28, 1949.

PX–1–50–8     Affidavits attached to Motion for Temporary Restraining Order and Affidavits (including affidavits of Ward D. Foster [excluding all except the exhibits attached and the Summary of Events Listed in Affidavit of Ward D. Foster and the references in the affidavit to exhibits attached thereto], Bert Bartley of Jan. 3, 1950, Bert Bartley of Dec. 30, 1949, Helen Bartley)—lodged Jan. 5, 1950.

PX–1–50–9     Affidavits in Support of Motion of Dec. 19, 1949, for Preliminary Injunction (including affidavits of John Pardo, O. Harry Schrader, Jr., Saul Jacob)—filed Jan. 9, 1950.

PX–1–50–10     Affidavits filed in support of Motion for Temporary Injunction and judgment of contempt against

Robert A. Vener, including affidavits of:

| | |
|---|---|
| Hemming of July 11, 1949 | —filed July 29, 1949 |
| Hemming of Feb. 15, 1949 | —filed Sept. 8, 1949 |
| Oeffinger of July 13, 1949 | —filed July 29, 1949 |
| Overholt of July 11, 1949 | —filed July 29, 1949 |
| Antoville of July 8, 1949 | —filed July 29, 1949 |
| Blanchard of Apr. 29, 1948 | —filed Apr. 30, 1948 |
| Brown of Apr. 30, 1948. | —filed Apr. 30, 1948 |
| Brummer of Apr. 28, 1948 | —filed Apr. 30, 1948 |
| Burns of Aug. 5, 1949 | —filed Sept. 8, 1949 |
| Dettmann of Apr. 29, 1948 | —filed Apr. 30, 1948 |
| Fair of Apr. 29, 1948 | —filed Apr. 30, 1948 |
| Frazee of Apr. 26, 1948 | —filed Apr. 30, 1948 |
| Heilman of Jan. 5, 1950 | —filed Jan. 9, 1950 |
| Hogan of Apr. 29, 1948 | —filed Apr. 30, 1948 |
| Hollested of Apr. 29, 1948 | —filed Apr. 30, 1948 |
| Hunt of June 27, 1949 | —filed July 29, 1949 |
| Jacob of Jan. 5, 1950 | —filed Jan. 9, 1950 |
| Jefferson of Apr. 29, 1948 | —filed Apr. 30, 1948 |
| Kunkle of Apr. 27, 1948 | —filed Apr. 30, 1948 |
| Laking of Apr. 26, 1948 | —filed Apr. 30, 1948 |
| Leishman of Apr. 30, 1948 | —filed Apr. 30, 1948 |
| Levan of July 6, 1949 | —filed July 29, 1949 |
| Lovingston of Apr. 27, 1948 | —filed Apr. 30, 1948 |
| Mager of Apr. 26, 1948 | —filed Apr. 30, 1948 |
| Mitchell of Apr. 27, 1948 | —filed Apr. 30, 1948 |
| Moncure of Apr. 29, 1948 | —filed Apr. 30, 1948 |
| Mullin of Apr. 29, 1948 | —filed Apr. 30, 1948 |
| O'Connor of June 28, 1949 | —filed July 29, 1949 |
| Ottinger of June 29, 1949 | —filed July 29, 1949 |
| Palmquist of Apr. 26, 1948 | —filed Apr. 30, 1948 |
| Pierce of Apr. 29, 1948 | —filed Apr. 30, 1948 |
| Restrick of Apr. 27, 1948 | —filed Apr. 30, 1948 |
| Saplin of Apr. 28, 1948 | —filed Apr. 30, 1948 |
| Sayer of Apr. 29, 1948 | —filed Apr. 30, 1948 |
| Schrader of Jan. 6, 1950 | —filed Jan. 9, 1950 |
| Siegel of Apr. 27, 1948 | —filed Apr. 30, 1948 |
| Smales of Jan. 6, 1950 | —filed Jan. 9, 1950 |
| Smales of July 16, 1949 | —filed July 29, 1949 |
| Smales of July 5, 1949 | —filed July 29, 1949 |
| Smith of Sept. 8, 1949 | —filed Sept. 8, 1949 |
| Smith of Apr. 26, 1948 | —filed Apr. 30, 1948 |
| Streatfield of Apr. 26, 1948 | —filed Apr. 30, 1948 |
| Taylor of Apr. 28, 1948 | —filed Apr. 30, 1948 |
| Thomas of Apr. 26, 1948 | —filed Apr. 30, 1948 |
| Wright of Apr. 29, 1948 | —filed Apr. 30, 1948 |

PX–1–50–12     Statement of Robert A. Vener (Plaintiff's former Exhibit 58)—filed Sept. 8, 1949.

PX–1–50–13–A     Deskey patent in suit.

PX–1–50–13–B     Sample of Weldtex plywood (same as Plaintiff's former Exhibit 2).

PX–1–50–13–C     Sample of Zeetex plywood (same as Plaintiff's former Exhibit 3).

PX–1–50–14     Abstract of Title of Deskey patent dated Jan. 3, 1950.

| | | |
|---|---|---|
| PX–1–50–15 | Deskey file wrapper. | |
| PX–1–50–16 | Eleven prior art patents cited in file wrapper: | |
| | Shannon | 501,668 |
| | Putman | 1,577,150 |
| | Runkle | 1,577,935 |
| | Melby | 1,634,789 |
| | Dennis | 1,636,218 |
| | Melby | 1,764,412 |
| | Land | 1,777,317 |
| | Nevin | 2,068,759 |
| | Fortune | 2,085,463 |
| | Gram | 2,090,529 |
| | Ottinger | 2,158,908 |

PX–1–50–17  Affidavit of Daugherty of Dec. 20, 1949.

PX–1–50–18  Clark affidavit of Jan. 30, 1950.

PX–1–50–19  Daugherty affidavit of Dec. 20, 1949.

PX–1–50–20  Ward D. Foster affidavit.

PX–1–50–21  Venetex plywood regular or single grooved (Plaintiff's former Exhibit 52).

PX–1–50–22  Venetex label (Plaintiff's former Exhibit 52–A).

PX–1–50–23  Venetex double grooved plywood (Plaintiff's former Exhibit 53).

PX–1–50–24  Venetex label (Plaintiff's former Exhibit 53–A).

PX–1–50–25  Photograph of enjoined Zeetex plywood Plaintiff's Exhibit 1–50–13–C (Plaintiff's former Exhibit 54).

PX–1–50–26  Photograph of accused Venetex held contumacious Plaintiff's Exhibit 1–50–21 (Plaintiff's former Exhibit 55).

PX–1–50–27  Composite photograph of parts of both Plaintiff's Exhibits 1–50–25 and 1–50–26 (Plaintiff's former Exhibit 56).

PX–1–50–28  Two films of photographs Plaintiff's Exhibits 1–50–25 and 1–50–26 (Plaintiff's former Exhibit 57).

PX–1–50–29  Certified copy of probate inventory and appraisement, Estate of Max Vener.

PX–1–50–30  Ottinger deposition taken by Defendants Sept. 29, 1949.

### Defendants' Exhibits

| | | |
|---|---|---|
| DX–1–50–A–1 | Affidavit of James M. Abbett | of May 10, 1948 |
| DX–1–50–A–2 | Affidavit of Edward Borcherding | of May 9, 1948 |
| DX–1–50–A–3 | Affidavit of Noble K. Lay | of May 7, 1948 |
| DX–1–50–A–4 | Affidavit of R. W. Anderson | of Aug. 19, 1949 |
| DX–1–50–A–5 | Affidavit of Robert A. Vener | of Aug. 25, 1949 |
| DX–1–50–A–6 | Affidavit of Arthur Koehler | of Aug. 24, 1949 |
| DX–1–50–A–7 | Affidavit of Arthur Koehler | of Sept. 6, 1949 |
| DX–1–50–A–8 | Affidavit of R. J. Kincaid | of Sept. 7, 1949 |
| DX–1–50–A–9 | Affidavit of C. R. Dowell | of Sept. 7, 1949 |
| DX–1–50–A–10 | Shannon patent | 501,668 |
| DX–1–50–A–11 | Basquin patent | 1,346,161 |
| DX–1–50–A–12 | Hansen patent | 1,433,077 |
| DX–1–50–A–13 | Putman patent | 1,577,150 |
| DX–1–50–A–14 | Runkle patent | 1,577,935 |
| DX–1–50–A–15 | Melby patent | 1,634,789 |
| DX–1–50–A–16 | Melby patent | 1,764,412 |
| DX–1–50–A–17 | Morden patent | 1,773,695 |
| DX–1–50–A–18 | Elmendorf patent | 1,819,775 |

| DX–1–50–A–19 | Gilmer patent | 1,943,597 |
| DX–1–50–A–20 | Elmendorf patent | 2,018,712 |
| DX–1–50–A–21 | Gram patent | 2,090,529 |
| DX–1–50–A–22 | Franklin patent | 2,220,898 |
| DX–1–50–A–23 | May patent | 61,549 |
| DX–1–50–A–24 | Tripler patent | 214,970 |
| DX–1–50–A–25 | Giersberg et al. patent | 283,595 |
| DX–1–50–A–26 | Hale patent | 299,382 |
| DX–1–50–A–27 | Porter patent | 734,135 |
| DX–1–50–A–28 | Hunerbeim patent | 800,805 |
| DX–1–50–A–29 | Burnett patent | 1,178,130 |
| DX–1–50–A–30 | Johnson patent | 2,155,376 |
| DX–1–50–A–31 | Heritage patent | 2,248,233 |
| DX–1–50–A–32 | Affidavit of George Bjork, and exhibits referred to | of Jan. 12, 1950 |
| DX–1–50–A–33 | Affidavit of Ole Sather, and exhibits referred to | of Jan. 12, 1950 |
| DX–1–50–A–34 | Affidavit of A. W. Miley, and physical exhibits | of Jan. 12, 1950 |
| DX–1–50–A–35 | Affidavit of Frank Robinson, and attached exhibits | of Jan. 12, 1950 |
| DX–1–50–A–36 | Affidavit of Kenneth S. O'Rourke | of Jan. 7, 1950 |
| DX–1–50–A–37 | Affidavit of James Merrill | of Jan. 21, 1950 |
| DX–1–50–A–38 | Affidavit of Romania Moore | of Jan. 19, 1950 |
| DX–1–50–A–39 | Affidavit of Harry G. Bailey, and exhibits | of Jan. 20, 1950 |
| DX–1–50–A–40 | Affidavit of Henry J. McClusky | of Jan. 17, 1950 |
| DX–1–50–A–41 | Affidavit of Rose B. Vener, an exhibit | of Jan. 19, 1950 |
| DX–1–50–A–42 | Affidavit of J. William Back | of Jan. 19, 1950 |
| DX–1–50–A–43 | Deposition of Arthur Trotter, taken by Plaintiff Dec. 19, 1949. |
| DX–1–50–A–44 | Deposition of Robert D. Stott, taken Jan. 4, 1950 |
| DX–1–50–A–45 | Deposition of Ralph S. Smith, taken Jan. 4, 1950. |
| DX–1–50–A–46 | Deposition of Herbert A. Reynolds, taken Jan. 4, 1950. |

Now, therefore, the Court, for good cause shown, makes the following findings of fact and adopts the following conclusions of law, all based upon said record before the Court.

## Findings of Fact

1. (A) Defendant Rose B. Vener, individually, is a citizen of California and is a resident of, and, at the times complained of in the First Combined Amended and Supplemental Complaint, was doing business in Los Angeles County, California, in this District, individually and under the fictitious firm name and style of Zero Plywood Company, and was Administratrix of the Estate of Max Vener, deceased, and, as such Administratrix, was doing business under the fictitious firm name and style of Zero Plywood Company.

(B) Defendant Zero Plywood Corp. is a California corporation and has a regular and established place of business in, and, at the times complained of in the First Combined Amended and Supplemental Complaint, was doing business in, the City of Los Angeles, California, in this District, and, at the times complained of in the First Combined Amended and Supplemental Complaint, was performing the acts of infringement complained of in said complaint in this District.

(C) Defendant Harry G. Bailey, individually, is a citizen of California and is a resident of, and, at the times complained of in the First Combined Amended and Supplemental Complaint, was doing business in Los Angeles County, California, in this District.

(D) Defendant Romania Moore, individually, is a citizen of California and is a resident of, and, at the times complained of in the First Combined Amended and Supplemental Complaint, was doing busi-

ness in Los Angeles County, California, in this District.

(E) Defendant J. William Back, individually, is a citizen of California and is a resident of, and, at the times complained of in the First Combined Amended and Supplemental Complaint, was doing business in Los Angeles County, California, in this District.

(F) Defendant Back Panel Company is a California corporation and has a regular and established place of business in, and, at the times complained of in the First Combined Amended and Supplemental Complaint, was doing business in, the City of Los Angeles, California, in this District, and, at the times complained of in the First Combined Amended and Supplemental Complaint, was performing the acts of infringement complained of in said complaint in this District.[1]

2. On June 9, 1942, United States Letters Patent No. 2,286,068 were duly issued to Plaintiff on the application of Donald Deskey, for Plywood Panel.

Since the date of their issuance, said Letters Patent No. 2,286,068 have been and still are owned by Plaintiff.

3. About May 15, 1940, Plaintiff adopted and has continuously thereafter used, and now uses, the trade-mark "Weldtex" on plywood panels, laminated assemblies of veneers, and sheets of materials bound together by adhesives; trade-mark registration No. 383,458 was granted to Plaintiff for the trade-mark "Weldtex" for such uses by the United States Patent Office on December 10, 1940, and ever since has been and now is owned by Plaintiff.

Since the summer of 1940, Plaintiff has continuously sold grooved plywood covered by said Deskey patent bearing the trade-mark "Weldtex", exemplified by Plaintiff's Exhibit 1-50-13-B, and, since 1946, a licensee, and, since 1947, licensees, under the Deskey patent have continuously sold such grooved plywoood bearing such trade-mark "Weldtex".

4. (A) Plaintiff has, since May, 1940, spent large sums of money in advertising and much time and effort in creating and developing a large market and demand by the trade and public throughout the United States for grooved plywood covered by said Deskey patent and recognition by the trade and public of the merit, utility, and dependability of Plaintiff's said product.

Typical specimens of such advertisements by Plaintiff of such grooved plywood appeared in:

> American Home
> Better Homes & Gardens
> House Beautiful
> House & Garden
> California Lumber Merchant
> The Plan
> News Flashes
> Lumber Cooperator
> Southern Lumber Journal
> Illinois Building News
> Wood Construction
> Indiana Lumber Dealer
> Interiors
> Yachting
> Motor Boating
> "Weldtex" Display Rack
> "Weldtex" Booklet, 8 pages
> "Weldtex" Booklet, 4 pages.

(B) Magazines and newspapers have given free publicity to Plaintiff's grooved plywood covered by the Deskey patent and exemplified by Plaintiff's Exhibit 1-50-13-B (Plaintiff's former Exhibit 2), and its novelty, utility, and unique properties; typical examples of such publicity are:

> Building Supply News, Aug. 1947, p. 32
> Science Illustrated, Oct. 1947
> New York Times, Feb. 1, 1948
> Modern Plastics Encyclopedia, p. 697, Vol. 1, 1947.

5. (A) The cost to Plaintiff of the first four (4) advertisements identified in the preceding finding was Twenty-eight Thousand Five Hundred Dollars ($28,500.00). The cost to Plaintiff of the "Weldtex" booklets, the last two items identified in the preceding finding, was Eight Thousand Six Hundred Dollars ($8,600.00). Typical of

---

1. Defendants named in Finding 1(A) to (F), inclusive, are hereinafter referred to as the "Defendants named herein."

the type of advertising known as sales promotional aids is the "Weldtex" Display Rack, which cost Plaintiff Eight Thousand Five Hundred Dollars ($8,500.00) for two thousand (2,000) distributed by Plaintiff. Between January, 1945, and December 31, 1949, Plaintiff spent upwards of One Hundred Thirty Thousand Dollars ($130,000.-00), or an average of over Twenty-five Thousand Dollars ($25,000.00) per year directly and specifically to advertise "Weldtex", its product covered by the Deskey patent, and, in addition, said product is advertised with others of Plaintiff's products, and, if apportionment of such advertising costs and expenses and salaries of the Advertising Department of Plaintiff were made to said product, the foregoing sums would be greatly increased. Likewise, if the entire period of Plaintiff's advertising and sales of its "Weldtex" product from May, 1940, to date were taken into account the above figures would be greatly increased.

(B) Plaintiff's investment in developing machines for making grooved plywood covered by the Deskey patent and exemplified by Plaintiff's Exhibit 1-50-13-B, and in rearranging and expanding its manufacturing facilities to make and distribute millions of square feet of said product, has been substantial, but, according to Plaintiff's Treasurer and Comptroller, it is impossible to now state this sum with extreme accuracy.

6. (A) Plaintiff has for many years prior to the acts of Defendants complained of in the First Combined Amended and Supplemental Complaint built up and enjoyed an extensive and profitable business in the manufacture and sale of plywood panels having a grooved surface, covered by the Deskey patent, exemplified by Plaintiff's Exhibit 1-50-13-B, and marked "Weldtex", and has spent large sums of money in advertising its product so trademarked throughout the United States.

(B) Plaintiff has sold the following quantities of grooved plywood covered by the Deskey patent, exemplified by Plaintiff's Exhibit 1-50-13-B, and marked "Weldtex" for at least the following approximate prices:

| Year | Square Feet | Selling Price |
| --- | --- | --- |
| 1940 | 27,487 | $ 4,123.11 |
| 1941 | 314,757 | 47,213.60 |
| 1942 | 418,967 | 62,845.06 |
| 1943 | 113,698 | 17,054.70 |
| 1944 | 70,445 | 10,566.83 |
| 1945 | 528,163 | 46,805.58 |
| 1946 | 24,620,329 | 2,432,567.03 |
| 1947 | 27,296,073 | 3,280,000.10 |
| 1948 | 29,313,850 | 4,811,059.32 |
| 1949 9 months | 20,950,788 | 3,695,438.86 |
| Total, from January, 1940 to Sept. 30, 1949. | 103,654,557 | $14,407,674.19 |
| Total, 3 years 9 months (from Jan. 1946, to Sept. 30, 1949) | 102,181,040 | $14,219,065.21 |

During the war years, Plaintiff's sales of said product were restricted by Government directives. Plaintiff's sales of said product in 1949, according to Plaintiff's Treasurer and Comptroller, will probably be about the same as in 1948.

7. As a result of Plaintiff's investment of time, effort, and money in advertising and promoting the sale of grooved plywood, covered by the Deskey patent, and exemplified by Plaintiff's Exhibit 1-50-13-B, Plaintiff has created and developed a large market and demand for its said product throughout the United States.

8. Whenever the trade or members of the public buying plywood see the trademark "Weldtex" upon or in any manner related to grooved plywood or its use or offer for sale, they immediately think of and associate it with grooved plywood covered by the Deskey patent and exemplified by Plaintiff's Exhibit 1-50-13-B, and they immediately associate it with Plaintiff and Plaintiff's said product.

9. All others than Plaintiff, excepting only Defendants herein, have respected the said Deskey patent by taking licenses thereunder and paying royalty therefor.

Plaintiff has licensed others in the United States under said Deskey patent to sell grooved plywood covered by said patent; these companies are: Cascades Plywood Corporation, Lebanon, Oregon, and Peninsula Plywood Corporation, Port Angels, Washington, which are not subsidiaries of Plaintiff but are independent mills.

During 1946 and 1947, Plaintiff received from its United States licensees as royalties under said Deskey patent the sum of Sixty Thousand Six Hundred Fifty-four and Thirteen/100 Dollars ($60,654.13).

Plaintiff has granted licenses under foreign Deskey patents to the following: Canadian Forest Products Limited, New Westminster, Canada, Proofwood Limited, Sidney, Australia, and Fletcher Holdings Limited, Auckland, New Zealand, which are not subsidiaries of Plaintiff, and are unrelated to Plaintiff and to each other.

10. Plaintiff has respected the Deskey patent by paying royalties thereunder.

While plaintiff has paid royalties under the Deskey patent prior to 1946, the record establishes that Plaintiff has paid the following royalties for the following periods of time:

| Year | Amount |
|------|--------|
| 1946 | $ 36,620.32 |
| 1947 | 39,296.08 |
| 1948 | 41,313.82 |
| First 9 months of 1949 | 32,950.80 |
| Total: 3 years, 9 months | $150,181.02 |

11. No other person, firm, or corporation other than the Defendants in this action have manufactured or sold without the license of Plaintiff any plywood having a grooved surface, as covered by said Deskey patent or as exemplified by Plaintiff's Exhibit 1-50-13-B.

12. Defendants named herein commenced the performance of the acts complained of on or about the 1st day of December, 1948.

13. Plaintiff's Exhibit 1-50-13-B is an example of grooved plywood sold by Plaintiff embodying the invention of said Deskey patent, marked with the number of said patent and two patents not in suit and Plaintiff's trade-mark "Weldtex".

Plaintiff's Exhibits 1-50-21 and 1-50-23 are examples of grooved plywood processed and sold, and bearing the trade-mark "Venetex", by Defendants Rose B. Vener, individually, Rose B. Vener, doing business under the fictitious firm name and style of Zero Plywood Company, Rose B. Vener, Administratrix of the Estate of Max Vener, deceased, and, as such Administratrix, doing business under the fictitious firm name and style of Zero Plywood Company, Zero Plywood Corp., a corporation, Harry G. Bailey, individually, and Romania Moore, individually, and sold by Defendants J. William Back, individually, and Back Panel Company, a corporation.

Plaintiff's Exhibit 1-50-21 is the same as Plaintiff's Exhibit 1-50-13-B.

The grooves of Plaintiff's Exhibit 1-50-23 are the same as the grooves of Plaintiff's Exhibit 1-50-13-B.

The average purchaser, exercising ordinary caution, cannot differentiate between Plaintiff's Exhibit 1-50-13-B on the one hand and Plaintiff's Exhibit 1-50-21 on the other hand.

14. The claims of said Deskey patent, as construed on this motion, reasonably read upon, describe, and are infringed by the processing, manufacture, use, and sale of grooved plywood as exemplified by Plaintiff's Exhibits 1-50-21 and 1-50-23, the grooves in which are formed by embossing by the application of heat and pressure.

The substance of the invention of said Deskey patent is embodied in the grooved plywood exemplified by Plaintiff's Exhibits 1-50-21 and 1-50-23, in which the grooves are formed by embossing by the application of heat and pressure, processed and sold by Defendants as set forth in the preceding finding.

15. The acts of Defendants named herein complained of in this action were performed with full knowledge of Plaintiff's said Deskey patent and of Plaintiff's grooved plywood manufactured and sold by Plaintiff under said patent and Plaintiff's said trade-mark "Weldtex" and Plaintiff's use of its said trade-mark on its grooved plywood, and with full knowledge of this Court's orders of July 28, 1948, and April

12, 1949, granting a preliminary injunction restraining the manufacture and sale by Defendant Robert A. Vener of grooved plywood exemplified by Plaintiff's Exhibit 1-50-13-C and this Court's judgment holding Defendant Robert A. Vener guilty of contempt because of his manufacture and sale of grooved plywood and acting in concert with those engaged in the manufacture and sale of grooved plywood, exemplified by Plaintiff's Exhibits 1-50-21 and 1-50-23, and such acts of such Defendants were wilfully and intentionally performed with such knowledge.

Defendant Back Panel Company had purchased grooved plywood from Plaintiff as exemplified by Plaintiff's Exhibit 1-50-13-B and sold the same prior to any acts of such Defendant complained of in this action; this grooved plywood purchased by such Defendant bore the Plaintiff's trademark "Weldtex"; Defendant Back Panel Company sells "Venetex" grooved plywood processed by Defendant Zero Plywood Corp. and formerly processed by Zero Plywood Company and is a distributor for Defendant Zero Plywood Corp. and was a distributor for Zero Plywood Company in selling such plywood; Defendant J. William Back is an officer of Defendant Back Panel Company.

Defendant Rose B. Vener is the mother of Defendant Robert A. Vener and the widow of Max Vener; Defendant Harry G. Bailey is the brother-in-law of Defendant Robert A. Vener; Defendants Rose B. Vener, Romania Moore, and Harry G. Bailey are the only officers, directors, and stockholders of Defendant Zero Plywood Corp.; Defendant Rose B. Vener is the owner of all but three (3) shares of the stock of Defendant Zero Plywood Corp.

Max Vener had assisted Defendant Robert A. Vener, doing business under the fictitious firm name and style of Vener & Son, and Defendant American Plywood Co., Inc., in their business until they were enjoined by the preliminary injunction of this Court herein; Max Vener, doing business under the fictitious firm name and style of Zero Plywood Company, commenced to produce and sell "Venetex" grooved plywood exemplified by Plaintiff's Exhib-

its 1-50-21 and 1-50-23 about December 1, 1948, and continued until his death, May 11, 1949; during such time, he continuously employed Defendants Robert A. Vener and Harry G. Bailey in the operation of the business, and such "Venetex" plywood was the only product produced by the business; Max Vener was present in Court when Plaintiff's Motion for a Preliminary Injunction was argued and when this Court made its oral order granting said preliminary injunction on July 28, 1948; after the death of Max Vener, Defendant Rose B. Vener, as an individual, and later as Administratrix of the Estate of Max Vener, deceased, continued the operation of the business under the fictitious firm name and style of Zero Plywood Company, processing and selling the same "Venetex" grooved plywood, and continuing the employment of Defendants Robert A. Vener and Harry G. Bailey in the operation of the business; thereafter, the business was continued by Defendant Zero Plywood Corp., which produced and sold the same "Venetex" plywood, the only product it produced; Defendant Zero Plywood Corp. has continuously employed Defendant Robert A. Vener in the operation of its business since its commencement and until Defendant Robert A. Vener was adjudged by this Court guilty of contempt of Court for violation of the preliminary injunction aforesaid because of the processing and sale of "Venetex" grooved plywood exemplified by Plaintiff's Exhibits 1-50-21 and 1-50-23; Defendant Zero Plywood Corp. has continuously employed Defendant Harry G. Bailey in the operation of its business since its commencement and until the present; Defendants Rose B. Vener and Harry G. Bailey were present in Court, and their presence was noted on the record, when this Court found Defendant Robert A. Vener guilty of contempt of Court for violation of the preliminary injunction herein because of the processing and sale of "Venetex" grooved plywood exemplified by Plaintiff's Exhibits 1-50-21 and 1-50-23, and when this Court warned them as follows:

"The Court: I think Rose Vener is in Court now.

"Mr. Foster: Yes, she is.

"The Court: Her testimony shows that she is the president, I believe, of that corporation.

"Mr. Foster: Yes, your honor.

"The Court: She certainly has knowledge now of the injunction and of the fact that Robert Vener has violated the injunction and is subject to contempt, and certainly she, I would think, would take notice of the fact and govern herself accordingly.

"Mr. Foster: Might the record also show that Mr. Bailey is present in Court?

"The Court: He is the same Mr. Bailey who refused to answer any questions on his deposition?

"Mr. Foster: Yes, your honor. He is an officer of Zero Plywood Corp."

On September 16, 1949, there was delivered to Defendants Rose B. Vener, Harry G. Bailey, and Zero Plywood Corp., and on September 19, 1949, to Defendants Back Panel Company and J. William Back, a letter from Plaintiff's counsel advising of the issue of the preliminary injunction herein enjoining the sale of "Venetex" grooved plywood, Plaintiff's Exhibit 1-50-13-C, and the finding of contempt of Defendant Robert A. Vener because of the manufacture and sale of "Venetex" grooved plywood Plaintiff's Exhibits 1-50-21 and 1-50-23, enclosing samples of each exhibit, and setting out a copy of this Court's Minute Order of September 14, 1949, which contained the following: "The matter of whether or not the Estate of Max Vener, Rose Vener, Harry G. Bailey, Zero Plywood Corporation, a corporation, and Back Panel Company are guilty of contempt, will be reserved until after the proceedings which plaintiff indicated would be taken for the amendment of the pleadings to include the above named as parties defendant"; on October 7, 1949, Plaintiff's counsel sent Defendant Romania Moore a letter to the same effect; the acts of all Defendants found herein to infringe said Deskey patent continued after the events aforesaid; and each of said Defendants, during the performance of the acts complained of in this action, had knowledge of this Court's oral and formal orders and preliminary injunction aforesaid restraining the manufacture and sale of grooved plywood exemplified by Plaintiff's Exhibit 1-50-13-C and its judgment aforesaid that the manufacture and sale of plywood exemplified by Plaintiff's Exhibits 1-50-21 and 1-50-23 violated said preliminary injunction.

16. None of the Defendants herein named has spent any substantial sums of money in advertising in any printed matter or by radio the grooved plywood which it or he has processed or sold.

The Defendants named herein have merely filled the demand and utilized the market for such grooved plywood created by Plaintiff.

17. Defendants named herein have sold and advertised for sale grooved plywood exemplified by Plaintiff's Exhibits 1-50-21 and 1-50-23 under the trade-mark "Venetex" and have used said trade-mark in advertising, and offering for sale, and selling all of their grooved plywood exemplified by such exhibits, all with knowledge of Plaintiff's earlier, continuous, extensive, and nationwide use, and advertising of its trade-mark "Weldtex" in connection with the sale and offering for sale of its grooved plywood exemplified by Plaintiff's Exhibit 1-50-13-B.

The trade-mark "Venetex" so used by Defendants is confusingly similar to the trade-mark "Weldtex" so used by Plaintiff; such use of the trade-mark "Venetex" will, and is likely to, cause, and has caused, confusion to the trade and public with Plaintiff's trade-mark "Weldtex", and the purchase by the trade and public of Defendants' products so marked as and for Plaintiff's product "Weldtex" and as and for a product originating in and manufactured by Plaintiff, and amounts to infringement of Plaintiff's said trade-mark and its registration thereof, and unfair competition with Plaintiff, and constitutes an aggravation of the Defendants' infringement of said Deskey patent No. 2,286,068 and the damages to Plaintiff directly resulting therefrom.

18. There is no evidence that any of the other Defendants named herein will be

able to meet their obligations to pay such damages.

19. There is no evidence that Defendant J. William Back, individually, or Back Panel Company has any investment in equipment for manufacturing or processing grooved plywood as exemplified by Plaintiff's Exhibit 1–50–21 or 1–50–23. All of such grooved plywood sold by said Defendants named in this paragraph was produced by said Defendants' purchasing plain-surfaced plywood and having the same grooved by embossing by the application of heat and pressure for said Defendants by others of the Defendants named herein. The only investment by any of the Defendants named herein in apparatus for manufacturing or processing grooved plywood as exemplied by Plaintiff's Exhibits 1–50–21 and 1–50–23 was that required for the purchase of a machine for forming the grooves in plain plywood by the application of heat and pressure.

20. The injury to Defendants herein named if the preliminary injunction be granted herein is small and inconsiderable, even if the final judgment be in their favor.

21. If a preliminary injunction is not granted herein, and the final judgment herein be in Plaintiff's favor, the injury to Plaintiff will be certain and irreparable.

22. For the purpose of this motion, in the said Deskey patent the patentee has reasonably particularly pointed out and distinctly claimed the part, improvement, or combination which he claims as his invention or discovery, and said claims are not functional. The claims recite that:

"the depth of said frequent grooves * * * being such as to prevent stresses, normally arising from stretching and expanding, from accumulating across any appreciable width of the grooved plywood".

In the specification the patentee states: "Preferably the grooves do not extend to or through the glue line ('glue' meaning any adhesive such as is used or is suitable for use in plywood manufacture) but more or less frequently recurring grooves may extend almost to the glue line, with intervening grooves of lesser and irregular depth. The grooves vary in depth, as the sample and photographs show, from mere surface scratches to grooves of a depth to extend to or past the neutral plane of the grooved surfaced plywood (half way through the ply), some being of a depth approaching the thickness of the ply itself."

23. For the purposes of this motion the invention disclosed and covered by said Deskey patent and exemplified by Plaintiff's Exhibits 1–50–13–B and 1–50–21 and 1–50–23 is not disclosed or taught by, and the claims of said Deskey patent are not anticipated by, any of the proven prior art in the record on this motion.

The claims of said Deskey patent define an article of manufacture which is useful and new and involves invention over the disclosures of all of the prior art and prior patents included in the record on this motion.

### Conclusions of Law

1. This Court has jurisdiction of this cause, and the venue is proper as to all of the Defendants named herein as to all counts of the First Combined Amended and Supplemental Complaint.

2. Sufficient evidence is not produced to establish the invalidity of the claims of said Deskey patent No. 2,286,068 over the presumption of validity attaching to the issue of said Letters Patent buttressed and reinforced by the additional presumptions set forth in the foregoing findings.

3. The presumption of validity of the Deskey patent No. 2,286,068 arising from the issue of said patent is enhanced by the great and immediate commercial success of the subject matter of said patent as sold by Plaintiff over a period of years, during which no other person presumed to make or sell such subject matter without license from Plaintiff, and this presumption is further enhanced by Plaintiff's having long paid substantial royalties under said patent and having licensed others to make grooved plywood under said patent, who have long paid substantial royalties thereunder.

Said Deskey patent, and each of the claims thereof, is good and valid on this motion.

4. Defendants Rose B. Vener, individually, Rose B. Vener, doing business under the fictitious firm name and style of Zero Plywood Company, Rose B. Vener, Administratrix of the Estate of Max Vener, deceased, and, as such Administratrix, doing business under the fictitious firm name and style of Zero Plywood Company, Zero Plywood Corp., a corporation, Harry G. Bailey, individually, and Romania Moore, individually, by making and selling, and Defendants J. William Back, individually, and Back Panel Company, a corporation, by selling, grooved plywood exemplified by Plaintiff's Exhibits 1–50–21 and 1–50–23 have, in view of the presumptions of validity of said Deskey patent No. 2,286,068 so enhanced, infringed said Deskey patent, and each of the claims thereof.

5. The sale and advertising for sale by the Defendants named herein of grooved plywood exemplified by Plaintiff's Exhibits 1–50–21 and 1–50–23 under the trade-mark "Venetex" and the use of said trade-mark in advertising and offering for sale and selling all of their grooved plywood exemplified by said exhibits, are an infringement of Plaintiff's trade-mark "Weldtex" earlier and continuously used by Plaintiff upon its grooved plywood exemplified by Plaintiff's Exhibit 1–50–13–B and Plaintiff's registration No. 383,458 of said trade-mark, and amount to unfair competition with Plaintiff and aggravation of the damages to Plaintiff directly caused by Defendants' infringement of said Deskey patent No. 2,286,068.

6. Plaintiff is entitled to a preliminary injunction until final determination of this action or further order of this Court restraining the Defendants named herein, and each of them, their officers, directors, associates, attorneys, confederates, privies, distributors, clerks, agents, servants, workmen, and employees, and those in active concert or participating with them, or any of them, from, directly or indirectly, making or causing to be made, using or causing to be used, selling or causing to be sold, advertising or offering for sale or use, agreeing or contracting to sell, causing to be contracted for sale, supplying or causing to be supplied, installing or causing to be installed, threatening to offer or contract for sale or supply, or disposing of in any manner articles or devices embodying or employing the invention or discovery and improvements of United States Letters Patent No. 2,286,068, issued to Plaintiff June 9, 1942, for Plywood Panel, or any of the claims thereof, or any substantial, material, or vital part, or parts, thereof as exemplified by Plaintiff's Exhibits 1–50–21 and 1–50–23, or either of them, or otherwise, and from using upon, or in any manner in connection with, or in advertising or offering for sale, grooved plywood, the trade-mark "Venetex", or any other trade-mark, name, legend, or indicia confusingly similar to Plaintiff's trade-mark "Weldtex", or otherwise competing unfairly with Plaintiff except that Defendant Back Panel Company may within thirty days dispose of their total stock now on hand of "Venetex" consisting of 1545 8' x 4' pieces.